**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELLE E. ALFRED, : | |
| : | Civil Action No. 13-0332 (RBK) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| STATE OF NEW JERSEY, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

Michelle E. Alfred
655 Absecon Blvd.
Apt. 606
Atlantic City, NJ 08401
        Plaintiff pro se

**KUGLER,** District Judge

        Plaintiff Michelle E. Alfred seeks to bring this action in forma pauperis pursuant to 42

U.S.C. § 1983, alleging violations of her constitutional rights.[1]

        At this time, the Court must review the Complaint to determine whether it should be

dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted,

or because it seeks monetary relief from a defendant who is immune from such relief.

---

[1] Based on her affidavit of indigence, the Court will grant Plaintiff's application to proceed in
forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to file the
Complaint.

# I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, and supplemental Letters, and are accepted as true for purposes of this review.

Plaintiff alleges that she is being harassed by Harvy Broughton and his friends Catherine Thacker and Ibhade Ibhadedifdon.[2] Of these three individuals, only Ibhade Ibhadedifdon is named as a Defendant here;[3] In general terms, Plaintiff alleges that Ibhade Ibhadedifdon has stolen Plaintiff's identity.

Although Plaintiff's Complaint is not entirely clear, it appears that she is alleging that Ms. Ibhadedifdon made a false report that Plaintiff was harassing her. Plaintiff further alleges that Defendant Atlantic County Court Administrator Bryant Tetter knows that Ms. Ibhadedifdon "files a lot of false claims in court." Plaintiff alleges that she was subject to a "false arrest" on September 1, 2012, when she was arrested pursuant to a warrant issued against her on October 8, 2009, for a violation of N.J.S.A. 2C:33-4A (Harassment), a copy of which is attached to one of Plaintiff's supplemental Letters (Docket Entry No. 2). The document is a computer printout entitled "COPY OF WARRANT," is addressed "TO ANY POLICE OFFICER," and directs arrest as follows:

> YOU ARE HEREBY COMMANDED TO ARREST THE DEFENDANT WHOSE NAME AND ADDRESS ARE SHOWN BELOW AND BRING HIM BEFORE THIS COURT TO ANSWER A COMPLAINT CHARGING AN OFFENSE IN THE JURISDICTION OF THIS COURT OR HOLD THE DEFENDANT TO BAIL BEFORE AN AUTHORIZED OFFICIAL IF AN AMOUNT OF BAIL IS SHOWN ABOVE.

(Docket Entry No. 2, Letter, Att.) The warrant states that it is issued by Order of Judge G. Bruce

---

[2] Plaintiff's handwritten submissions are not particularly legible. Accordingly, the spelling of proper names in this Opinion may not be accurate.

[3] Plaintiff alleges that she has obtained a restraining order against Mr. Broughton.

Ward, a judge of the Atlantic County Municipal Court, and is "authorized" by Court Administrator Brian W. Jetter.[4]  The warrant further sets a bail amount of $500, not subject to bond.  Plaintiff alleges that she was released on September 8, 2012.  She alleges that she suffered chest pain while she was confined and that she believes she had a heart attack.

In the original Complaint, Plaintiff names the following Defendants:  the State of New Jersey, the Atlantic City Police Department, the Atlantic City Municipal Court, Judge Bruce Ward, Court Administrator Bryant Tetter, Clerk to Judge Ward Ms. Cotice Witherspoon-Stanford, Atlantic City Police Department Sgt. Brennum, Littlefield City Lawyer Brian Braun, Ms. Ibhade Ibhadedifdon, Mayor L. Langford, Chief of Police Mr. Earnest Jubilee, Captain of Police Mr. Vanenburg, Detective Lori Nylam, Detective Stephen Rando, Investigator Charlotte Berries, the Atlantic City Prosecutors Office, Ms. Tina Lolita, Ms. Diana Licki of the Prosecutors' Office, James Lenard (lawyer for Harry Broughton), State Parole Officer Mr. B. Smith, Sgt. McGrafe of the Criminal Justice Unit, and Mr. Charles Cresenzo of the Criminal Justice Unit.

In a Letter [3] to the Court dated July 15, 2013, Plaintiff seeks leave to add Ventnor Prosecutor Mr. Mosca who allegedly interviewed her at the courthouse on March 26, 2013, the day that charges against her were dropped.  Plaintiff alleges that Mr. Mosca asked her for identification and asked her to tell him "what happened."  It is not clear whether Mr. Mosca is alleged to have interviewed Plaintiff before or after the charges were dropped or whether he had any participation in the criminal action against her.

Plaintiff demands that a grand jury be convened and that federal criminal corruption charges be brought against all those involved.  She also seeks damages in the amount of $50

---

[4] The Court notes that this spelling is different than that employed by Plaintiff:  Bryant Tetter.

million for malicious prosecution, false reports, defamation, and emotional suffering.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

### A.    Screening Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B),  or in which a prisoner seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 28 U.S.C. § 1997e.  The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915 because Plaintiff sought and has been granted leave to proceed in forma pauperis.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive sua sponte screening for failure to state a claim[5], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Belmont v. MB Inv. Partners, Inc., 708

---

[5] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678).  Moreover, while pro se

pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their

complaints to support a claim."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir.

2013) (citation omitted) (emphasis added).

B.      General Pleading Standards

        In addition, Rule 10(b) of the Federal Rules of Civil Procedure provides:

        A party must state its claims ... in numbered paragraphs, each limited as far as
        practicable to a single set of circumstances.  ...  If doing so would promote clarity,
        each claim founded on a separate transaction or occurrence ... must be stated in a
        separate count or defense.

        Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may

join as independent or alternative claims, as many claims as it has against an opposing party."

Fed.R.Civ.P. 18(a).

        Rule 20(a)(2) controls the permissive joinder of defendants in civil actions:

        Persons ... may be joined in one action as defendants if:
                (A) any right to relief is asserted against them jointly, severally, or in the
        alternative with respect to or arising out of the same transaction, occurrence, or
        series of transactions or occurrences; and
                (B) any question of law or fact common to all defendants will arise in the
        action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 F. App'x 436 (3d Cir. 2007); George

v. Smith, 507 F.3d 605 (7th Cir. 2007).

        In actions involving multiple claims and multiple defendants, Rule 20 operates

independently of Rule 18.

                Despite the broad language of rule 18(a), plaintiff may join multiple
        defendants in a single action only if plaintiff asserts at least one claim to relief
        against each of them that arises out of the same transaction or occurrence and
        presents questions of law or fact common to all.  If the requirements for joinder of
        parties have been satisfied, however, Rule 18 may be invoked independently to
        permit plaintiff to join as many other claims as plaintiff has against the multiple

defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 F. App'x 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).[6]

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of

---

[6] The Court will take this opportunity to note that the Complaint fails utterly to comply with the requirements of Rules 10, 18, and 20. The Complaint lists all Defendants at the beginning, then asserts minimal factual allegations regarding only a few of the named Defendants, and asserts no factual allegations that would suggest that "any question of law or fact common to all defendants will arise in the action." This Court will assess the viability of the various claims asserted by reference to the facts asserted against specific Defendants.

Because of the deficiencies of the various claims Plaintiff attempts to assert here, this Court need not dismiss the Complaint for failure to comply with these pleading requirements. To the extent Plaintiff seeks leave in the future to file an amended complaint, however, she must submit a pleading that complies with the Federal Rules of Civil Procedure.

his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.  ANALYSIS

A.    False Arrest

Plaintiff alleges in conclusory language that she was subject to a "false" arrest for harassment on September 1, 2012, when she was arrested pursuant to the warrant issued in 2009 by Judge Bruce Ward and "authorized" by Court Administrator Bryant Tetter, who allegedly knows that Ibhade Ibhadedifdon makes many false claims.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000) (collecting cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  Mesgleski v. Oraboni, 330 N.J. Super. 10, 24 (App. Div. 2000).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause."  James v.

City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) and Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  Lind v. Schmid, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."  Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Here, as is apparent from the face of the arrest warrant, it was issued after a criminal complaint had been filed against Plaintiff, who was, therefore, a defendant in a pending criminal action, not a mere suspect.  Plaintiff has failed to allege any facts regarding the genesis of the criminal complaint, the nature of the information provided by the alleged victim, or the nature of the investigation that preceded the filing of the criminal complaint.  She has failed to allege the identity of the arresting officer or the information known to that person.  She has failed to allege anything regarding the responsibilities or authority of Court Administrator Bryant Tetter, who allegedly "authorized" the issuance of the warrant, other than naming his title, which suggests only that he performed a routine judicial support task of producing a copy of a court record.  The allegation that he knows that Ibhade Ibhadedifdon has made other false allegations in court, unsupported by any underlying facts or time frame, is not sufficient to demonstrate that he had

any involvement in the initiation of this criminal complaint against Plaintiff, pursuant to which issuance of the arrest warrant would appear to have been completely proper.

Moreover, Plaintiff cannot rely on the subsequent dismissal of the charges against her to establish that she was falsely arrested. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released." <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979). <u>See also</u> <u>Lynn v. Christner</u>, 184 F. App'x 180, 183-84 (3d Cir. 2006) ("The proper inquiry in a 1983 claim based on false arrest … is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." (citations and internal quotation marks omitted)).

Finally, to the extent Plaintiff seeks to direct her § 1983 claim at Ibhade Ibhadedifdon, based on her alleged false statements, Plaintiff has not alleged that this defendant is a state actor.

Accordingly, in the face of the criminal complaint that had been filed before the arrest warrant was issued, the skeletal factual allegations contained in the Complaint are not sufficient to raise Plaintiff's alleged right to relief against any state actor above a speculative level. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). This claim will be dismissed without prejudice for failure to state a claim. <u>Cf.</u> <u>Kline v. Hall</u>, Civil Action No. 12-1727, 2013 WL 1775061, *3 (M.D. Pa. Apr. 25, 2013) (dismissing, as "conclusory," false arrest claim based on allegations that arresting officer conducted field sobriety test "in a thoroughly flawed and incomplete fashion," and that the sobriety checkpoint was flawed "procedurally and substantively").

B.    <u>Malicious Prosecution</u>

In order to state a <u>prima facie</u> case for a § 1983 claim of malicious prosecution in

violation of the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, and that there has been some deprivation of liberty consistent with a "seizure" in violation of the Fourth Amendment.  See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)); Johnson v. Knorr, 477 F.3d 75, 81-85 (3d Cir. 2007); Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).[7]  The common law elements of the tort of malicious prosecution action arising out of a criminal prosecution are:  (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  See Wiltz v. Middlesex County Office of Prosecutor, 249 F. App'x 944, 949 (3d Cir. 2007) (citing Johnson v. Knorr, 477 F.3d at 82); Lind v. Schmid, 67 N.J. 255, 262 (1975).  As noted above, a plaintiff attempting to state a Fourth Amendment malicious prosecution claim under § 1983 must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'" Gallo, 161 F.3d at 222 (citation omitted).   See also Carney v. Pennsauken Twp. Police Dept., Civil Action No. 11-7366, 2013 WL 2444043, *3 (D.N.J. June 3, 2013) (also noting that, to state a Fourth Amendment malicious prosecution claim, a plaintiff must allege both the common law elements of the tort of malicious prosecution and a deprivation of liberty sufficient to constitute a "seizure" within the meaning of the Fourth Amendment, but further noting that it is appropriate for federal courts deciding Fourth Amendment malicious prosecution claims to consider state

_____

[7] In Gallo, the Court noted that prosecution without probable cause probably is not, in and of itself, a constitutional tort based on a violation of substantive due process.  "Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution," which raises a claim of violation of the Fourth Amendment right not to be subjected to unreasonable seizures. It is for this reason that a § 1983 claim for unconstitutional malicious prosecution must include an allegation that there was a seizure within the meaning of the Fourth Amendment.  161 F.3d at 222 (citing Albright v. Oliver, 510 U.S. 266 (1994)).

cases interpreting the elements of the common law tort, which have been "adopted" by federal courts).

Here, Plaintiff is not clear about the state actor who allegedly instituted the criminal prosecution against her. Although Plaintiff has adequately alleged that she was seized, and that the criminal proceeding terminated in her favor after she filed the original Complaint, she has failed to allege facts demonstrating that any state actor acted with malice in instituting the proceeding against her or, as noted previously, that any state actor instituted the action without probable cause. It is not sufficient to state, in conclusory fashion, that there was no probable cause for the prosecution. Instead, she must state facts regarding the information known to the person who instituted the proceeding, from which facts it could be concluded that the prosecution was instituted without probable cause. See, e.g., Carney, 2013 WL 2444043, *3-*4; Pitman v. Ottehberg, Civil Action No. 10-2538, 2011 WL 6935274, *11, *13-14 (D.N.J. Dec. 30 2011). Accordingly, this claim will be dismissed without prejudice for failure to state a claim. Cf. Jacobs v. City of Bridgeton, Civil Action No. 09-3035, 2009 WL 2016300, *3 (D.N.J. July 2, 2009) (holding that the plaintiff's self-serving, conclusory repeats of the phrase that "each Defendant 'violat[ed] Plaintiff[']s 5th and 6th amendments [and] subjecting Plaintiff to frivolous litigation and malicious prosecution'" did not meet the Iqbal pleading requirements); Basinger v. Wentz, Civil Action No. 08-1545, 2009 WL 1675274, *3 (M.D. Pa. June 15, 2009) (dismissing malicious prosecution claim based on "sweeping, conclusory legal statements condemning Defendants" for, e.g., bringing "baseless charges" against the plaintiff).[8]

## C.    Vicarious Liability

Plaintiff has named as Defendants, here, a plethora of remote actors, against whom no

---

[8] Again, as Ibhade Ibhadedifdon is not a state actor, she cannot be held liable under § 1983 for any alleged constitutional violation.

specific factual allegations are made, including the Atlantic City Police Department, Atlantic City Police Department Sgt. Brennum, Littlefield City Lawyer Brian Braun, Mayor L. Langford, Chief of Police Earnest Jubilee, Captain of Police Mr. Vanenburg, and Detectives Lori Nylam and Stephen Rando.

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See Connick v. Thompson, 131 S.Ct. 1350, 1358-61 (2011); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000), and cited in Olivieri v. County of Bucks, 502 F. App'x 184, 189 (3d Cir. 2012).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's

injury.  Monell, 436 U.S. at 689.

>A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."

>There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has failed to allege any facts that would suggest that any of the above-referenced remote actors was personally involved in the alleged violations of her constitutional rights or that any of them, or any municipality or government agency with which any of them is associated, is responsible for any policy or custom that contributed to the alleged violations of Plaintiff's constitutional rights.  Accordingly, the claims against these Defendants will be dismissed without prejudice for failure to state a claim.

D.  Judicial Immunity

Plaintiff has named as Defendants here Judge Bruce Ward, his clerk Ms. Cotice Witherspoon-Stanford, Ms. Tina Lolita (described as the person who "oversees" the Atlantic and Cape May courthouses),[9] and Court Administrator Bryant Tetter.

---

[9] Plaintiff has made no factual allegations regarding Ms. Cotice Witherspoon-Stanford or Ms. Lolita.  For this reason, alone, the claims against them are dismissible.

As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity. See Mireles v. Waco, 502 U.S. 9, 9 (1991), cited and followed in Howell v. Young, No. 13-1281, 2013 WL 3481759 (3d Cir. July 3, 2013). Judicial immunity can be overcome only for actions not taken in a judicial capacity, Mireles, 502 U.S. at 9, or for actions taken in a complete absence of all jurisdiction, id. at 11-12. Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity. See Forrester v. White, 484 U.S. 219, 227 (1988). Any action taken by Judge Bruce Ward in issuing the arrest warrant was clearly taken in his judicial capacity. Accordingly, the claim against Judge Ward will be dismissed with prejudice on grounds of immunity.

In addition, quasi-judicial immunity may extend to professionals who assist courts in their judicial function.[10] See Hughes v. Long, 242 F.3d 121 (3d Cir. 2001). In Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993), the Supreme Court held that judicial immunity may be extended to officials other than judges "because their judgments are 'functional[ly] comparab[le]' to those of judges--that is, because they, too, 'exercise a discretionary judgment' as a part of their function." 508 U.S. at 436 (citations omitted). Under this "functional" approach, courts must look to the nature of the function performed and not to the identity of the actor performing it, to determine if immunity is appropriate. See Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993); Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 103 (3d Cir. 2011) ("[D]eciding whether to extend quasi-judicial immunity to an official involves a legal determination that focuses on the legal and structural components of the job function ….")

---

[10] The immunity analysis is the same whether the suit is brought against state actors pursuant to 42 U.S.C. § 1983 or against federal actors in a Bivens-type action. Antoine v. Byers  Anderson, Inc., 508 U.S. at 433 n.5 (1993).

14

(citing <u>Dotzel v. Ashbridge</u>, 438 F.3d 320, 325 (3d Cir. 2006) (internal quotation marks omitted).

There is no binding Third Circuit authority on the question of whether court clerks are entitled to absolute immunity for conduct such as that charged here—"authorizing" the production of an arrest warrant issued by a judge.[11]  However, courts in this Circuit and others have extended quasi-judicial immunity to court clerks who are alleged to have acted incorrectly or improperly in carrying out their official duties.[12]  Moreover, the Third Circuit has reached similar conclusions in several unpublished decisions.  <u>See</u>, <u>e.g.</u>, <u>Wicks v. Lycoming Co.</u>, 456 F. App'x 112, 115 (3d Cir. 2012) (finding that court administrator was entitled to absolute immunity for transferring case from one judge to another); <u>Wallace v. Abell</u>, 217 F. App'x 124 (3d Cir. 2007) (holding Clerk of Court absolutely immune from a suit for damages for discretionary acts, and that court personnel are qualifiedly immune for nondiscretionary acts such as entering orders and notifying parties).  Court Administrator Tetter's actions challenged here, by Plaintiff, appear integral to the judicial function and within the responsibility assigned to court personnel.  Thus, he is, at the least, entitled to qualified immunity, in the absence of any factual allegations that suggests he did anything other than properly perform a task in support of the judicial function.

---

[11] Immunity analysis is the same whether the suit is brought against state actors pursuant to 42 U.S.C. §  1983 or against federal actors in a <u>Bivens-</u>type action.  <u>Antoine v. Byers & Anderson, Inc.</u>, 508 U.S. at 433 n.5 (1993).

[12] <u>See</u>, <u>e.g.</u>, <u>Fischer v. United States</u>, Civil Action No. 02-0691, 2003 WL 21262103, *4-*5 (C.D. Cal. 2003) (unpublished) (finding that court clerks were immune from claims that they had obstructed justice and encouraged organized crime by not entering defaults, by entering motions to dismiss as answers, by entering prohibited pre-trial motions, or by altering the sequence of events (numbers and entry dates) while supposedly correctly docketing a case); <u>Davis v. Philadelphia County</u>, 195 F.Supp.2d 686, 688 (E.D. Pa. 2002); <u>Harris v. Suter</u>, 3 F. App'x 365 (6th Cir. 2001); <u>McGann v. Lange</u>, Civil Action No. 96-0859, 1996 WL 586798 (E.D.N.Y. 1996) (unpublished).

Similarly, in the post-Antoine era, courts have continued to afford quasi-judicial immunity to judicial law clerks, insofar as their challenged actions involve official duties that are integral to the judicial function.  See, e.g., Jackson v.Pfau, Civil Action No. 12-0324, 2013 WL 1338712 (2d Cir. Apr. 4, 2013); Jallali v. Florida, 404 F. App'x 455 (11th Cir. 2010).  In the absence of any factual allegations regarding law clerk Cotice Witherspoon-Stanford, she is entitled to quasi-judicial immunity.

For the foregoing reasons, all claims against Judge Bruce Ward, Court Administrator Tetter, and law clerk Cotice Witherspoon-Stanford will be dismissed with prejudice.  As Plaintiff has made no factual allegations from which Ms. Lolita's general responsibilities can be gleaned, it is not possible to determine whether she may be entitled to quasi-judicial immunity.

E.    Prosecutorial Immunity

Plaintiff has named as a Defendant Ms. Diana Licki, who is described as an Assistant Prosecutor.[13]  In addition, she has sought leave to amend the Complaint to add as a defendant Mr. Mosca, who is described as a prosecutor of the Ventnor courthouse, and who is alleged to have interviewed Plaintiff at the courthouse on the day the charges against her were dropped. (Docket Entry 3, Letter.)

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under 42 U.S.C. § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as

_____

[13] In the text of the Complaint, though not in the caption, Plaintiff also lists as employees of the Prosecutors Office Chief Prosecutor Mr. McClain and Assistant Prosecutor Mr. Edmund Burgos. It is not clear whether Plaintiff seeks to proceed against these individuals.  To the extent she intended to name these two individuals as defendants, the discussion herein regarding Defendant Diana Licki applies equally to them.

an advocate for the State, are entitled to the protections of absolute immunity." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993).  <u>See</u> <u>B.S. v. Somerset County</u>, 704 F.3d 250, 269 (3d Cir. 2013).

Here, the only facts alleged regarding Plaintiff's prosecution are that a criminal complaint was filed, that a judicial officer set bail, and that the charges were later dismissed.  There is nothing in Plaintiff's allegations to suggest that any of the referenced prosecutors were acting outside the scope of their duties.  Rather, they were pursuing a criminal prosecution.  Accordingly, they are entitled to absolute immunity.  The request to amend the Complaint will be denied as futile.

F.      <u>Eleventh Amendment Immunity</u>

Plaintiff has named as defendants several entities that are immune from suit in federal court under the Eleventh Amendment to the U.S. Constitution, including the State of New Jersey, Atlantic City Municipal Court, and the Atlantic City Prosecutors Office.

The Eleventh Amendment provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984).  Section 1983 does not override a state's Eleventh Amendment immunity.  <u>Quern v.</u>

Jordan, 440 U.S. 332 (1979). See also Hurst v. City of Rehoboth Beach, 288 F. App'x 20, 24-25 (3d Cir. 2008) (citing Edelman, Pennhurst, and Quern). Thus, the State of New Jersey is immune from suit here.

To determine whether Eleventh Amendment immunity applies to a state agency, a court must consider three factors: (1) the source of the agency's funding - i.e., whether payment of any judgment would come from the state's treasury, (2) the status of the agency under state law, and (3) the degree of autonomy from state regulation. See Flitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied, 493 U.S. 850 (1989).

In Coleman v. Kaye, 87 F.3d 1491 (3d Cir. 1996) (abrogated on other grounds), the U.S. Court of Appeals for the Third Circuit considered all of these factors in the context of a New Jersey county prosecutor's office. The circuit held that, "when [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the state." Id. at 1505. See Woodyard v. County of Essex, Civil Action No. 12-2945, 2013 WL 791634, at *3 (citing same). The circuit further held, however, that "Eleventh Amendment immunity may not apply when prosecutorial defendants perform administrative tasks unrelated to their strictly prosecutorial functions, such as … personnel decisions." Coleman, 87 F.3d at 1505. Here, there is no suggestion that the Atlantic City Prosecutors Office was engaging in anything but classic law enforcement functions in the prosecution of Plaintiff for harassment. Accordingly, that office is an executive agency of the State of New Jersey entitled to Eleventh Amendment immunity. See Smith v. New Jersey, Civil Action No. 12-0478, 2012 WL 5185611, *3-*4 (D.N.J. Oct. 18, 2012); Pitman v. Ottehberg, Civil Action No. 10-2538, 2011 WL 6935274, *4-*8 (D.N.J. Dec. 30, 2011) (collecting cases).

In addition, this Court has previously held that municipal courts, as part of the judicial

branch of the State of New Jersey, are entitled to Eleventh Amendment immunity.  See, e.g., Hernandez v. Switzer, Civil Action No. 09-2758, 2009 WL 4730182, *3 (D.N.J. Dec. 4, 2009); Beckett v. Vega, Civil Action No. 05-3443, 2006 WL 1320043, *2 (D.N.J. 2006).  Furthermore, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, are persons within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Willliamson v. Atlantic County Superior Court, Civil Action No.12-7345, 2013 WL 1934517, *1 (D.N.J. May 8, 2013) (prosecutor's office is not a "person" within the meaning of § 1983); Hernandez v. Switzer, 2009 WL 4730182, *3 n.5 (municipal court is not a "person" within the meaning of § 1983).

For all the foregoing reasons, the claims against the State of New Jersey, the Atlantic City Prosecutors Office, and the Atlantic City Municipal Court will be dismissed with prejudice. Plaintiff could not cure the deficiencies in the claims against these defendants by any further amendment of the Complaint.

G.    Criminal Charges

Plaintiff asks this Court to convene a grand jury and pursue criminal charges against the Defendants.  Authorities are in agreement, however, that the submission by a private party of a civil rights complaint, or a purported criminal complaint, in federal court is not the appropriate manner in which to initiate criminal proceedings.

> A private person may not prosecute a federal criminal complaint. Prosecution of a federal crime is the prerogative of the United States through the attorney general and his delegates, the United States attorneys.  28 U.S.C. §  516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); The Confiscation Cases, 74 U.S. 454, 457 (1868) ("Public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the district attorney, [...]"); ...; United States ex rel. Savage v. Arnold, 403 F.Supp. 172, 174 (E.D. Pa.

1975); <u>United States v. Panza</u>, 381 F.Supp. 1133, 1133-35 (W.D. Pa. 1974) (reciting history of rule); ... .

<u>Peters v. Beard</u>, 2006 WL 2174707 (M.D. Pa. June 13, 2006) (Report and Recommendation) (citations omitted), <u>adopted by</u>, 2006 WL 2175173 (M.D. Pa. Aug. 1, 2006). <u>See also</u> <u>Higgins v. Neal</u>, 52 F.3d 337, 1995 WL 216920 (10th Cir. 1995) (unpubl.) (collecting cases); <u>Caracter v. Avshalumov</u>, Civil Action No. 06-4310, 2006 WL 3231465 (D.N.J. Nov. 8, 2006) (collecting cases); <u>Stoll v. Martin</u>, 2006 WL 2024387 (N.D. Fla. July 17, 2006) (collecting cases).

Nevertheless, if a purported criminal complaint warrants action, a court may refer it to the United States Attorney for action. <u>Savage</u>, 403 F.Supp. at 174. The commencement of a criminal action is governed in part by Federal Rules of Criminal Procedure 3 and 4, which provide some guidance in determining whether a purported criminal complaint merits reference to the United States Attorney. Rule 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged. ... [I]t must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer." Rule 4 provides, in pertinent part, "If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."

Here, Plaintiff's allegations are not sufficient to establish probable cause to believe that any Defendant here violated any federal criminal statute. This Court perceives no reason, on the basis of the facts before it, to refer this matter to the United States Attorney.

G.    <u>Pendent State Law Claims</u>

To the extent the Complaint could be construed to assert state tort claims, for defamation, for example, they will be dismissed without prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over

which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim. The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted, alteration in original), <u>quoted in</u> <u>White v. Camden Bd. of Ed.</u>, No. 12-3743, 2013 WL 3115208, *2 (3d Cir. June 20, 2013). As no such extraordinary circumstances appear to be present, this Court will dismiss any state law claims without prejudice.

V. <u>CONCLUSION</u>

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B). All claims against Defendants Judge Bruce Ward, Ms. Cotice Witherspoon-Standford, Bryant Tetter, Ms. Diana Licki, the State of New Jersey, Atlantic City Municipal Court, and the Atlantic City Prosecutors Office are dismissed with prejudice. However, because it is conceivable that Plaintiff may be able to supplement her pleading with facts sufficient to overcome the deficiencies described herein, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[14]

An appropriate order follows.

s/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: August 29, 2013

---

[14] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. <u>See</u> <u>West Run Student Housing Associates, LLC v. Huntington National Bank</u>, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. Apr. 4, 2013) (collecting cases). <u>See also</u> 6 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. <u>Id.</u>